The R. Wantz & Sons Construction Co., Appellant, *v.* Kosydar, Tax Commr., Appellee.

(No. 74-6—Decided June 26, 1974.)

278

*Messrs. Class, Ketchel & Lawrence* and *Mr. Edwin J. Ketchel,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mrs. Maryann B. Gall,* for appellee.

*Per Curiam.* The issue before us is whether it was reasonable and lawful for the Board of Tax Appeals to have concluded that the purchase and lease by appellant of material, equipment and parts used in performing construction contracts for public utilities and governmental subdivisions were not excepted from sales and use taxation. We conclude that the decision of the board was reasonable and lawful, and we affirm its order upholding the assessments levied by the Tax Commissioner against appellant.

R. C. 5739.02 levies an excise tax on each retail sale made in Ohio.[1] R. C. 5739.01(E) (2) excepts from the definition of "retail sale," and hence from the sales tax, those sales in which the purpose of the consumer is:

"To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing * * * or to use or consume the thing transferred * * * directly in the rendition of a public utility service * * *."

Appellant advances three theories of tax exception, each of which, if correct, would entitle it to exception from the sales tax for a part of the total assessment. If all of its contentions are correct, the taxpayer would be entitled to exception for all of the purchases and leases of material, equipment and parts involved here.

Appellant argues that its purchases of building and construction materials for use in its sewer projects for political subdivisions are excepted from the sales tax by virtue of R. C. 5739.02(B) (13).[2] It contends that that statute

---

[1] We need only discuss the sales tax aspects of this case, since R. C. 5741.02(C) (2) excepts from the application of the use tax:

"Tangible personal property, the acquisition of which, if made in Ohio, would be a sale not subject to the [sales] tax * * *."

[2] That statute excepts from the application of the tax:

"Building and construction materials sold to construction contractors for incorporation into a structure or improvement to real property

does not require that such materials become a part of the completed improvement so long as their use was necessary in the construction of the improvement. The Tax Commissioner disagreed, finding that the statutory requirement of incorporation had not been met, and the Board of Tax Appeals found nothing in the record to substantiate the taxpayer's claim for exception. We reject appellant's argument that an item need not be physically affixed to an improvement to be "incorporated" therein, as that term is used in R. C. 5739.02(B) (13). There is evidence in the record to suggest that some of the materials used may in fact have been so incorporated—for example, some of the lumber used to shore up the walls of trenches and left underground after completion of the project—but the possible exception from tax for that part of the assessment was not advanced by the taxpayer, nor does the record make any identification of which materials might have been so irrevocably incorporated into the improvement.

Appellant's construction and repair of electrical conduits for public utility companies comprises the bulk of its activity. It concedes that it cannot avail itself of an exception from the sales tax granted by the first clause of R. C. 5739.01(Q)[3] for purchases of material, equipment, and parts for the construction of new installations, but it asserts that such activity constitutes "manufacturing," and is thus excepted from the tax by R. C. 5739.01(S).[4] We agree

---

under a construction contract with this state or a political subdivision thereof * * *."

[3]R. C. 5739.01(Q) defines "used directly in the rendition of a public utility service," which appears in R. C. 5739.01(E) (2), as:

"* * * That property which is to be incorporated into and will become a part of the *consumer's* production, transmission, transportation, or distribution system * * *." (Emphasis added.)

[4]That statute provides that:

" 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E) (2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced."

with the board's conclusion that appellant's contention is without merit. As understood by this court, the manufacture of tangible personal property for sale does not encompass a situation such as the present one, in which tangible personal property is merely assembled, without the transformation into a different state or form required by R. C. 5739.01(S).

Appellant's final contention is based upon the final clause of R. C. 5739.01(Q), which includes in the definition of direct use in the rendition of public utility services such tangible personal property as is:

"* * * Used in the repair and maintenance of the production, transmission, transportation, or distribution system, including only such motor vehicles as are specially designed and equipped for such use."

Appellant argues that the last clause of R. C. 5739.01 (Q), unlike the first, carries no requirement that the consumer of the property be the provider of the public utility service to merit exception from the tax. Therefore, the taxpayer contends, it is entitled to exception from tax on the purchase and lease of that property it uses for the maintenance and repair of existing conduit systems.

Even if it be assumed, *arguendo*, that this last contention is correct, appellant has failed to carry its burden of establishing its right to the exception from the tax. It is axiomatic that statutes granting exception from tax are strictly construed, and a party seeking exception from taxation has the obligation to affirmatively prove its right to such exception. The general manager of the appellant company testified before the Board of Tax Appeals that all of the items assessed could be, and were, used in the installation of new conduit as well as in the repair of existing systems. That is to say, even if appellant's interpretation of R. C. 5739.01(Q) be correct, which we do not now decide, the items involved were used for nonexcepted as well as for excepted purposes. It is the burden of the party claiming exception to prove that the primary use of the property was for an excepted purpose before exception will be allowed, *Mead Corp.* v. *Glander* (1950), 153 Ohio St.

539; *Jewel Companies* v. *Porterfield* (1970), 21 Ohio St. 2d 97. An examination of the record indicates that the appellant failed to offer any classification of the primary uses of the items assessed. In such a case, an order of the Board of Tax Appeals denying the tax exception is reasonable and lawful. *Merchants Cold Storage Co.* v. *Glander* (1948), 150 Ohio St. 524.

*Decision affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.